IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| COURTNEY WRIGHT (K74776),<br><br>               Plaintiff,<br><br>         v.<br><br>WARDEN DANIELS, et al.,<br><br>               Defendants. | Case No. 24 C 5241<br><br>Hon. Manish S. Shah |

**ORDER**

Plaintiff's request for recruited counsel [5] is granted. The Court recruits Matthew S. Miller, 4044 N. Lincoln Avenue, No. 122 / Chicago, IL 60618, (312) 285-0771, mmiller@msmillerlaw.com, to represent Plaintiff in accordance with his trial bar obligations under Local Rules 83.11 and 83.37 (N.D. Ill.). By 3/27/25, counsel shall file an appearance and a status report explaining counsel's efforts to investigate Plaintiff's case and file an amended complaint. Plaintiff's pro se complaint is dismissed without prejudice, to allow recruited counsel to file an amended complaint. Recruited counsel should also consider the two-year statute of limitations that ordinarily applies to Section 1983 claims arising out of conduct in Illinois. If counsel believes that he cannot represent Plaintiff consistent with counsel's Rule 11 obligations, counsel should include that in the status report. The Clerk of Court is directed to send a copy of this order to Plaintiff, Attorney Miller, the Systems Department of the Northern District of Illinois, and the PACER Service Center at pacer@psc.uscourts.gov.

**STATEMENT**

Plaintiff Courtney Wright, a prisoner at Lawrence Correctional Center, brings this *pro se* civil rights lawsuit pursuant to 42 U.S.C. § 1983 seeking damages related to his medical care from September 2022 through May 2024 while incarcerated at Sheridan Correctional Center and Lawrence Correctional Center. Plaintiff has paid the filing fee associated with this lawsuit (Dkt. 12) and Plaintiff's complaint is now before the Court for initial review.

Because Plaintiff seeks relief from a government entity, or employee of a governmental entity, the Court is required to screen his complaint and dismiss the complaint, or any portion of the complaint, if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from an immune defendant. *See* 28 U.S.C. § 1915A; *Jones v. Bock,* 549 U.S. 199, 214 (2007). Courts screen prisoners' complaints using the same standard applied to motions to dismiss

under Federal Rule of Civil Procedure 12(b)(6). *Schillinger v. Kiley*, 954 F.3d 990, 993-94 (7th Cir. 2020).

Plaintiff's 37-page complaint covers a time span of approximately eighteen months – from September 2022 to May 2024 – and involves claims against thirteen individual Defendants at two different facilities. The complaint is missing a scanned page (hand-numbered page 15).

Plaintiff alleges that he suffered from a painful, swollen jaw and other ailments – including pus with a foul odor oozing from his mouth/jaw – but was denied adequate medical care from October 2022 until May 2024 (when he was finally seen by an outside dentist who performed a tooth extraction and cyst removal). Plaintiff further alleges that he became suicidal during the summer of 2023 due to the lack of dental care and received constitutionally inadequate mental health care in response to his requests for help.

In September 2022, while incarcerated at Sheridan Correctional Center, Plaintiff complained about "excruciating pain" radiating through the lower part of his jaw and asked to be seen by Dentist C. Okezie. Dkt. 1 ¶¶ 35-36. When he was finally seen by Dr. Okezie, Plaintiff presented with a swollen jaw displaying "an abnormal enlargement" and he informed Dr. Okezie that every time he opened and closed his mouth he experienced "sharp" pains. *Id.* ¶ 37. Dr. Okezie did not examine Plaintiff at this visit, but he did determine that Plaintiff needed new fillings. *Id.* Plaintiff was not provided with new fillings during this first visit and no subsequent visit appears to have been scheduled. In January 2023, Plaintiff requested a follow-up appointment with a different dentist as well as "something to relieve his pain." *Id.* ¶ 39. Despite several requests from Plaintiff, it was not until the second week of February that he was finally called to the dentist, when he saw Dr. Okezie again. *Id.* ¶¶ 40-41. At the time of this second visit, Plaintiff had visible yellowish-white fluid oozing from the infected tissue in his mouth. *Id.* ¶ 41. Dr. Okezie again told Plaintiff that he needed new fillings, but otherwise "there was nothing wrong." *Id.* Plaintiff refused to let Dr. Okezie put in new fillings and requested to be seen by an outside dentist. *Id.* ¶¶ 42-43. Dr. Okezie denied Plaintiff's request. *Id.* ¶ 43.

Plaintiff was seen by several additional healthcare providers who treated his symptoms during this same time period. Dr. O.J. advised Plaintiff to see the dentist. *Id.* ¶ 45. Nurse Jane Doe told him his symptoms were caused by allergies. *Id.* ¶ 46. Nurse Hiety ordered ear wax removal. *Id.* ¶ 47. Nurse Myshone ordered medicated ear drops and she advised Plaintiff to request to see an outside dentist. *Id.* ¶ 49.

In September or October 2022, Plaintiff wrote to Deputy Warden Miles and also spoke to her face-to-face "about the beginning of the dental issues." *Id.* ¶ 53. At that time "nothing was done" to address his concerns. *Id.* Similarly, in the summer of 2023, Plaintiff spoke to Warden Daniels during her walk through and explained that

he needed medical attention. *Id.* ¶ 54. In response to Plaintiff's visibly swollen jaw, Warden Daniels told Plaintiff to "write the dentist" but took no further action. *Id.* ¶¶ 54-55.

In July 2023, Plaintiff began to experience "psychic trauma" due to his constant pain and belief "there was no relief in sight." *Id.* ¶¶ 58-59. On July 8, 2023, Plaintiff called for a crisis team and complained to Mental Health Professional Oaks that he was experiencing headaches, dizziness, shortness of breath, and jaw pain. *Id.* ¶ 60. M.H.P. Oaks told Plaintiff "she was powerless to do anything" noting "they won't let me." *Id.* ¶¶ 61, 70. Approximately two weeks later, M.H.P. Oaks and M.H.P. Mines informed Plaintiff that "his mental health was in shambles." *Id.* ¶ 68. M.H.P. Oaks and M.H.P. Mines provided Plaintiff with a diagnosis. *Id.* ¶ 69. The next day, Plaintiff began to contemplate suicide. *Id.* ¶¶ 62-63. Plaintiff then began screaming for help, and he was placed on suicide watch from July 28, 2023 to August 2, 2023. *Id.* ¶¶ 64-66.

On August 2, 2023, after Plaintiff was released from restrictive housing, Sergeant "John Doe" "rushed [Plaintiff] over to see the psychiatrist and the dentist." *Id.* ¶ 73. Sergeant John Doe instructed Plaintiff "to not say anything [about what was happening in segregation] so that he could be transferred." *Id.* ¶¶ 74, 163. Following Sergeant John Doe's instructions, Plaintiff did not explain to the psychiatrist what he was experiencing. *Id.* ¶ 74. Plaintiff was transferred to Lawrence Correctional Center later that same month. *Id.* ¶ 156.

At an unknown date, sometime after Plaintiff arrived at Lawrence, "dentist Tran" arranged for an outside surgeon to perform oral surgery on Plaintiff. *Id.* ¶ 147. Medical Administrator Cunningham subsequently made the decision not to pay for the recommended surgery, which caused further (unspecified) delay. *Id.* ¶¶ 147-148.

Also while at Lawrence, Plaintiff had in-person conversations with both Chief Administrative Officer Brookhart and Acting Chief Brown "about sending Plaintiff to an outside dentist." *Id.* ¶ 103. Despite having a "visual account" of Plaintiff's "disfigured face and swollen neck," Brookhart and Brown refused to send Plaintiff to the emergency room or other outside specialists. *Id.* ¶¶ 104, 120, 130, 136. The exhibits attached to Plaintiff's complaint show that Plaintiff was seen by outside specialists in November 2023, March 2024, and May 2024 while incarcerated at Lawrence. *See* Dkt. 1, pg. 42, pg. 60, pg. 47; *see also id.,* pgs. 70-72.

Correctional officials and healthcare providers may be liable under the Eighth Amendment if they "display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721-22 (7th Cir. 2021). To state such a claim, Plaintiff must allege facts indicating that he suffered from a serious medical condition and Defendants were deliberately indifferent to his needs, meaning they deliberately disregarded an excessive risk of harm to his health or safety. *Johnson v.*

3

*Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021). Deliberate indifference can include "a prison official's decision to ignore a request for medical assistance" as well as "an inexplicable delay in treatment which serves no penological interest." *Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016), as amended (Aug. 25, 2016). Healthcare providers are entitled to deference in their treatment decisions "unless no minimally competent professional would have so responded under the circumstances." *McDaniel v. Syed*, 115 F.4th 805, 832 (7th Cir. 2024) (citations omitted); *see also White v. Woods*, 48 F.4th 853, 862 (7th Cir. 2022) (treatment must be "so inadequate that it demonstrated an absence of professional judgment"). A plaintiff's mere "[d]isagreement with a treatment plan" or even "evidence of negligence or medical malpractice" does not establish an Eighth Amendment violation. *Cuesta v. Barker*, 738 F. App'x 882, 885 (7th Cir. 2018) (unpublished). On the other hand, evidence that a healthcare provider "persists in a course of treatment known to be ineffective" can support a claim for deliberate indifference. *Petties*, 836 F.3d at 729-30. "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022).

Plaintiff has alleged sufficient facts to state a plausible claim against Dr. Okezie. Plaintiff presented to Dr. Okezie on multiple occasions with a swollen jaw, sharp pain, and pus oozing from an infection in his mouth. The Court cannot determine at the pleading stage whether Dr. Okezie's decision to recommend new fillings was consistent with professional dental standards, and "disagreement over whether one course of treatment is preferable to another," without more, does not form the basis for a viable Eighth Amendment claim. *Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). Refusing treatment also undermines a plaintiff's deliberate-indifference claim. *See Kendrick v. Frank*, 310 F. App'x 34, 38 (7th Cir. 2009) (finding no deliberate indifference where prison doctor offered to perform a biopsy but plaintiff refused because he wanted an oncologist to perform the procedure). But there are enough details in the complaint to state a plausible claim against Dr. Okezie. Further factual development is needed to ascertain whether Dr. Okezie in fact exercised his professional discretion when deciding not to refer Plaintiff to an outside specialist and whether that decision was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 411-12 (7th Cir. 2014).

Plaintiff may also have viable claims against Dr. O.J., Nurse Jane Doe, Nurse Hiety and/or Nurse Myshone, but what's alleged is not enough. None of these providers ignored Plaintiff's symptoms, nor did they continue to pursue a course of treatment they already knew to be ineffective. Rather, in a sequence of visits that appears to be successive, the complaint describes each provider attempting to address Plaintiff's concerns by recommending new and different types of treatment. Put another way, the complaint describes what appears to be nothing other than the exercise of professional decision-making in response to Plaintiff's symptoms.

In July 2023, when Plaintiff was showing signs of a nervous breakdown, provided with a formal diagnosis, and placed on suicide watch, he likely had a serious medical condition. M.H.P. Mines informed Plaintiff that his mental health was "in shambles" and diagnosed him that same day. Although M.H.P. Oaks allegedly told Plaintiff that M.H.P. Mines "doesn't know how to do her job," Dkt. 1 ¶ 70, the complaint does not allege that M.H.P. Mines was incorrect or otherwise harmed Plaintiff. M.H.P. Oaks twice informed Plaintiff she was not allowed to treat his complaints. But when Plaintiff called for a crisis team, he informed M.H.P. Oaks "about the headaches, dizziness, shortness of breath and jaw pain." *Id.* ¶ 60. It is reasonable to infer that the M.H.P.'s response that she was "powerless to do anything" because "they won't let me" suggests that she took no steps at all to ensure Plaintiff was receiving constitutionally adequate care (after receiving firsthand reports suggesting that he was not). These allegations may be sufficient to state a claim for deliberate indifference against M.H.P. Oaks.

While non-medical defendants are typically entitled to defer to healthcare professionals on questions of care, deference is not appropriate if a non-medical defendant has reason to believe that doctors are "mistreating (or not treating)" a prisoner. *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). Once a non-medical defendant has reason to believe a prisoner may not be receiving constitutionally adequate medical care, he or she has an obligation to at least investigate the complaint. *Id.* Plaintiff has alleged that he spoke to Warden Daniels "about needing medical attention" and "the need for emergency medical assistance" during the summer of 2023. Dkt. 1 ¶¶ 54-55. Given the apparent need for further investigation, Plaintiff may have a plausible claim against Warden Daniels for deliberate indifference.

Plaintiff's allegations with respect to Deputy Warden Miles are different. Plaintiff alleges that he spoke to her in September or October of 2022 and informed her "about the beginning of the dental issues" Dkt. 1 ¶ 53. Plaintiff does not allege that he requested Deputy Warden Miles's assistance or intervention, or that he told her of any unmet medical need. Without more, Deputy Warden Miles would have no reason to suspect that Plaintiff was not receiving constitutionally adequate medical care and was therefore not required to take any action.

Plaintiff likewise fails to state a claim against either C.A.O. Brookhart or C.A.O. Brown. Plaintiff alleges that he had in-person conversations with both administrators "about sending Plaintiff to an outside dentist" but they refused his requests to see any outside providers. *Id.* ¶¶ 103-104, 120. But Plaintiff *was* seen by outside specialists at least three times while at Lawrence: in November 2023, March 2024, and May 2024. Without more detail regarding the dates or times when he spoke with C.A.O Bookhart and C.A.O. Brown, it is impossible for the Court to determine

5

whether Plaintiff has plausibly alleged any harmful consequences stemming from their refusals.

Conversely, Plaintiff may have a claim for deliberate indifference against Medical Administrator Cunningham. Plaintiff was referred for oral surgery in October 2023, *see* Dkt 1, pg. 40, but did not actually receive the surgery until May 2024. According to Plaintiff, the reason for this delay was Medical Administrator Cunningham's "decision not [to] allocate the money" to pay for his surgery. *Id.* ¶¶ 147-148. While these allegations are sparse, Plaintiff may have enough to suggest "such serious delay in his treatment that the Eighth Amendment may have been violated." *McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010).

Plaintiff alleges that Sergeant John Doe encouraged him not to divulge "what's been going on back here in segregation" after he was released from restrictive housing in August 2023. Dkt. 1 ¶¶ 74, 163. "Raising concerns about safety or other prison conditions is a constitutionally protected activity." *Beatty v. Henshaw*, 826 F. App'x 561, 564 (7th Cir. 2020) (cleaned up). Sergeant John Doe is alleged to have threatened Plaintiff in an effort to prevent this type of disclosure. *See Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) ("The first amendment protects speakers from threats of punishment that are designed to discourage future speech."). Whether a specific threat rises to the level of a constitutional claim depends on whether the threat "would likely deter a person of ordinary firmness" from engaging in protected speech. *Beatty*, 826 F. App'x at 563. In this case, Plaintiff alleges that Sergeant John Doe threatened Plaintiff with continued incarceration at Sheridan. Dkt. 1. ¶ 163 ("they will put a medical hold on you and keep you here"). But without additional context, it is difficult to infer that Sergeant John Doe's alleged threat amounted to a threat of punishment. Plaintiff also alleges that Sergeant John Doe "repeatedly harassed and caused harm to Plaintiff in retaliation for filing grievances" and "forced Plaintiff to submit to a strip search, even though he had no reason to do so." *Id.* ¶¶ 162-163. But Plaintiff provides no details about the alleged harassment or harm that Plaintiff experienced at the hands of Sergeant John Doe and, with respect to the strip search, there are no allegations connecting these actions to Plaintiff's protected First Amendment activity. Without more, Plaintiff has not pleaded sufficient facts to support a retaliation claim against Sergeant John Doe; and in any event, no claim can proceed without identifying and naming the defendant.

While there is no right to court-appointed counsel in federal civil cases, the Court finds that the factual and legal issues in this case are sufficiently complex to warrant the recruitment of counsel, given the potential need for discovery regarding professional standards of care, Plaintiff's struggle to identify a coherent timeline of events, and the need to identify defendants to serve them with process. Accordingly, the Court grants Plaintiff's request for counsel.

6

The Court recruits Matthew S. Miller, 4044 N. Lincoln Avenue, No. 122 / Chicago, IL 60618, (312) 285-0771, mmiller@msmillerlaw.com, to represent Plaintiff in accordance with his trial bar obligations under Local Rules 83.11 and 83.37 (N.D. Ill.). By the date stated above, Attorney Miller must enter an appearance for Plaintiff and an initial status report.

Pro bono resources are available at http://www.ilnd.uscourts.gov, by clicking on the link to Pro Bono Resources for Trial Bar Attorneys. Another resource is an attorney with the Uptown People's Law Center, Mr. Alan Mills, who may be reached by email at alan@uplcchicago.org. In addition, counsel should review Local Rule 54.1 concerning the taxation of costs and the limits established by the Judicial Conference of the United States and/or published rates on the Court's website.

Recruited counsel falls within the class of users listed in the Electronic Public Access fee schedule adopted by the Judicial Conference of the United States. Counsel therefore shall be exempt from payment of fees for access via PACER to the electronic case files maintained in this court for the above-captioned case. Fees are exempt only for the listed case. Counsel shall not be exempt from fees incurred by other uses of PACER. The exemption is valid immediately and for the duration of counsel's participation in this matter. The exemption may be revoked at the discretion of the Court at any time. Counsel shall contact the PACER Service Center at 1-800-676-6856 or at pacer@psc.uscourts.gov to create a separate PACER account to be used for this case and to make any necessary arrangements for the waiver.

Plaintiff is advised that recruiting counsel for an unrepresented individual is a privilege. He must listen carefully to counsel's advice and be mindful, as any paying client would be, of counsel's workload, time, and effort. Plaintiff also must conduct himself appropriately during all his interactions and communications with counsel. If the Court allows counsel to withdraw, there is no guarantee the Court will recruit substitute counsel. In addition, Plaintiff should be aware that pursuant to Local Rule 83.40 and the Regulations Governing the Prepayment & Reimbursement of Expenses of Court Assigned Counsel in Pro Bono Cases from the District Court Fund, any recovery (e.g., settlement, judgment, award of fees, or costs) in excess of $50,000 requires reimbursement to the District Court Fund from such recovery for amounts paid on behalf of the receiving party in excess of $5,000.

ENTER:

Date: February 27, 2025

Manish S. Shah
U.S. District Judge