IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| COURTNEY WRIGHT (#74776), | ) | |
| | ) | |
| Plaintiff, | ) | Case No 24-cv-5241 |
| V | ) | |
| | ) | Honorable Manish S. Shah |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| (former) WARDEN SHERWIN KIA | ) | |
| MILES, WARDEN DANIELS, | ) | |
| WARDEN JEREMIAH BROWN, and | ) | |
| JOHN DOE #1, INCLUSIVE | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff, COURTNEY WRIGHT, by his undersigned counsel, hereby files this Amended Complaint as follows:

**PARTIES & PARTY EMPLOYEES**

1. Mr. WRIGHT (#74776) is an incarcerated individual currently in the custody of the Illinois Department of Corrections (the "IDOC") at Lawrence Correctional Center at 10930 Lawrence Road, Sumner, IL 62466. At times relevant to this action, Mr. WRIGHT was also incarcerated at Sheridan Correctional Center, 4017 E. 2603 Road, Sheridan, IL 60551.

2. Defendant Wexford Health Sources, Inc. ("Wexford Health") is a Pennsylvania corporation with a place of business at 37W755 IL-38, St. Charles, Illinois 60174. Wexford Health is a correctional health care company responsible for providing health care services on behalf of the IDOC to prisoners at Lawrence Correctional Center and Sheridan Correctional Center. Wexford Health is also responsible for the implementation, oversight and supervision of health care policies and practices (including mental health policies and practices) at Lawrence Correctional Center, Sheridan Correctional Center and on behalf of the IDOC, generally. At the

1

times relevant to this action, Wexford Health acted under the color of state law in carrying out the conduct described herein. Wexford Health is sued in its official capacity.

3. At times relevant to this complaint, Dr. C. Okezie was employed by Wexford Health to provide services to individuals in the Illinois Department of Corrections (IDOC) facilities, including at the Sheridan Correctional Center. Dr. C. Okezie is skilled and licensed to practice in the prevention, diagnosis and treatment of disease, injuries to and malformation of teeth, jaws, and mouth, including the making and insertion of false teeth.

4. At times relevant to this complaint, Mrs. Heity [first name unknown] [was employed by Wexford Health to provide services to individuals in the Illinois Department of Corrections (IDOC) facilities, including at the Sheridan Correctional Center. Mrs. Heity is licensed as a nurse to provide health care.

5. At times relevant to this complaint, Mrs. Myshone K. [ full name unknown] was employed by Wexford Health to provide services to individuals in the Illinois Department of Corrections (IDOC) facilities, including at the Dixon and Sheridan Correctional Center, among others, Mrs. Myshone K. is skilled and licensed as a nurse practitioner.

6. At all times relevant to this complaint, Mr. O.J. [full name unknown] was employed by Wexford Health to provide services to individuals in the Illinois Department of Corrections (IDOC) facilities, including at the Sheridan Correctional Center. Mr. O.J. is skilled and licensed as a nurse practitioner with advanced training and education.

7. At times relevant to this complaint, Mrs. Taylor Oaks was employed by Wexford Health to provide services to individuals in the Illinois Department of Corrections (IDOC) facilities, including at the Sheridan Correctional Center. Mrs. Taylor Oaks is skilled and licensed as a mental healthcare provider.

8. At times relevant to this complaint, Mrs. Mines [first name unknown] was employed by Wexford Health to provide services to individuals in the Illinois Department of Corrections (IDOC) facilities, including at the Sheridan Correctional Center. Mrs. Mines is skilled and licensed as a mental healthcare provider .

9. Defendant Chief Administrative Officer/Warden Mrs. K. Daniels [full first name unknown] is and/or was employed by the Illinois Department of Corrections (IDOC) as a Chief Administrative Officer/Warden at the Sheridan Correctional Center. Mrs. K. Daniels is generally responsible for ensuring that the policies and procedures of the IDOC are properly executed. At all times relevant to this action, Mrs. K. Daniels acted under the color of state law in carrying out the conduct described herein. Mrs. K. Daniels is sued in her individual and Official capacity.

10. Defendant [Prior] Chief Administrative Officer/Warden Mrs. Sherwin Kia Miles was employed by the Illinois Department of Corrections (IDOC) as a Deputy Warden at the Sheridan Correctional Center.

11. Defendant John Doe #1 is and/or was employed by the Illinois Department of Corrections (IDOC) as a Correctional Sergeant at the Sheridan Correctional Center. At all times relevant to this action, John Doe #1 acted under the color of state law in carrying out the conduct described herein. John Doe #1 is sued in his individual and Official capacity.

12. Defendant Mrs. Lorie Cunningham is employed by the Illinois Department of Corrections (IDOC) as a Medical Administrator at the Lawrence Correctional Center. Mrs. Lorie Cunningham is responsible for transportation of prisoners to medical appointments. At all times relevant to this action, Mrs. Cunningham acted under the color of state law in carrying out the conduct described herein.

13. At times relevant to this complaint, Dr. Quan Tran is and/or was employed by Wexford Health to provide services to individuals in the Illinois Department of Corrections (IDOC) facilities, including at the Lawrence Correctional Center. Dr. Quan Tran is skilled and licensed to practice in the prevention, diagnosis and treatment of disease, injuries to and malformation of teeth, jaws, and mouth, including all relevant aspects of dentistry.

14. At times relevant to this complaint, Dr. Swanson was employed by Wexford Health to provide services to individuals in the Illinois Department of Corrections (IDOC) facilities, including at the Lawrence Correctional Center. Dr. Swanson is skilled and licensed to practice in the prevention, diagnosis and treatment of disease, injuries to and malformation of teeth, jaws, and mouth, including all relevant aspects of dentistry.

15. Defendant Chief Administrative Officer/Warden Jeremiah Brown is employed by the Illinois Department of Corrections (IDOC) at the Lawrence Correctional Center. Warden Brown is responsible for carrying out IDOC policies and procedures for the Correctional Center. At all times relevant to this action, Warden Brown acted under the color of state law in carrying out the conduct described herein. Mr. Brown is sued in his individual and Official capacity.

## JURISDICTION AND VENUE

16. This action is brought pursuant to 42 U.S.C. Sec. 1983 and the Eighth Amendment to the United States Constitution. This Court has jurisdiction over these claims under 28 U.S.C. Sec. 1331 and 1343(3).

17. Venue is proper pursuant to 28 U.S.C. Sec. 1391(b) because each claim arose in the Northern District of Illinois and because Mr. WRIGHT is a resident of this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

18. Pursuant to 42 U.S.C. Sec. 1997e(a), Mr. WRIGHT attempted to resolve the instant complaint by exhausting his rights through the grievance procedures provided to him at Lawrence Correctional Center and Sheridan Correctional Center, including pursuing all available administrative appeals.

## FACTS COMMON TO ALL COUNTS

### *Nature of the Case – Failure to Treat Mr. WRIGHT's Medical and Mental Health Needs While Incarcerated at Sheridan Correctional Center and Lawrence Correctional Center*

19. At present time, Mr. WRIGHT is serving a 75-year murder sentence at Lawrence with an expected release date in December 2086.

20. In <u>September and/or October 2022</u>, Mr. WRIGHT was housed at the Sheridan Correctional Center and sought medical attention from a dentist by submitting a request form (a.k.a. a "sick call pass") to the facility's health services, which form was to be promptly evaluated by correctional administrators and/or medical staff.

21. After placing several more "sick call pass" requests and complaining of excruciating pain that radiated through the lower part of his jaw, Mr. WRIGHT saw Defendant C. Okezie for a dental exam.

22. At the time of Mr. WRIGHT's initial dental exam, sometime in September and/or October 2022, his jaw was swollen, abnormally enlarged, and explained to dentist, Defendant C. Okezie, that he felt sharp pains every time he opened and closed his mouth.

23. Dentist, C. Okezie, without examining Mr. WRIGHT, announced to Mr. WRIGHT that "they [the facility] had no tools" nor "a dental hygienist" before determining that Mr. WRIGHT needed new fillings.

24. In September and October 2022, Mr. WRIGHT wrote to Defendant Warden Miles and also spoke with her in person about Mr. WRIGHT's dental issues, but nothing was done in response to these issues.

25. Sometime in January 2023, Mr. WRIGHT requested dental examination by a dentist other than C. Okezie given the lack of proper dental equipment at the Sheridan facility and further sought pain relief for his mouth.

26. Thereafter, Mr. WRIGHT made several more requests for mouth pain relief to the facility's health services/infirmary and to the Sheridan Correctional Center nurses he saw during delivery of medication to Mr. WRIGHT, and other inmates, and was eventually called for a follow-up dental exam.

27. On February 1, 2023, Dentist C. Okezie observed a yellowish-white fluid oozing from infected tissue in Mr. WRIGHT's mouth but stated to Mr. WRIGHT that there was nothing wrong and that Mr. WRIGHT just needed new fillings.

28. Mr. WRIGHT questioned C. Ozekie's assessment and refused the provision of new fillings believing his tooth/mouth required more extensive treatment that was not available at the Sheridan facility. Mr. WRIGHT again requested examination by a different/better equipped dentist, which request was denied by C. Okezie. C. Okezie did not call Mr. WRIGHT back for further dental care.

29. In April and/or May 2023, Mr. O.J. [full name unknown] saw Mr. WRIGHT at the Health Care Infirmary, noticed his swollen jaw, but told Mr. WRIGHT there was nothing he could do and that "you should put in to see the dentist."

30. At that time, the nurse practitioner, O.J. [full name unknown] examined Mr. WRIGHT and expressed his belief that Mr. WRIGHT suffered from allergies.

6

31.     Also, in April and/or May 2023, and at the time Mr. WRIGHT saw nurse practitioner, Mrs. Myshone K., puss was coming from Mr. WRIGHT's ears. Mrs. Myshone K. ordered ear wax removal, which resulted in burning sensations in Mr. WRIGHT's ears. Mrs. Myshone K. ordered medicated ear drops for Mr. WRIGHT upon observing the puss oozing from what is believed to be an infection and/or cyst in Mr. WRIGHT's ear. At this time, Mr. WRIGHT's mouth and ears emitted a foul odor, his jaw was swollen, and he was suffering from headaches and watery red eyes.[1]

32.     During Mr. WRIGHT's April and/or May 2023 examination by Mrs. Myshone K., Mr. WRIGHT expressed the pain in his mouth and tooth. Mrs. Myshone K. stated to Mr. WRIGHT that there was nothing she could do but instructed Mr. WRIGHT to request a dentist because "you need to be properly examined" and "request an outside dentist because this facility is ill equipped to function" for Mr. WRIGHT's needs. Thereafter, Mr. Wright wrote to the Warden a second time.

33.     Pursuant to Mrs. Myshone K.'s direction, Mr. WRIGHT was again seen by dentist, C. Okezie, and again requested to see a different dentist.

34.     From June 2023 through August 2023, Mr. WRIGHT pled for help as his pain worsened, the swelling of his mouth increased, his headaches heightened, his eyes became glossy, and his continued suffering became unbearable.

35.     In June 2023, July 2023 and August 2023, Mr. WRIGHT again spoke with Defendant Warden K. Daniels about his need for medical attention, including his swollen jaw, and the need for emergency medical assistance, during her walk through at the facility, but no action

---

[1] It is believed that Mrs. Myshone K. was filling in at Sheridan Correctional Center and recommended outside treatment for Mr. WRIGHT because Sheridan was not equipped to address Mr. WRIGHT's dental needs.

7

was taken by Defendant Warden K. Daniels in response. Instead, Defendant Warden K. Daniels told Mr. WRIGHT to write to the dentist.

36. Due to the severity of Mr. WRIGHT's substantial dental needs, excruciating pain from the delayed treatment, and lack of appropriate administration of pain relievers, Mr. WRIGHT became emotionally distressed and experienced trauma on or about July 8, 2023, and July 27, 2023. This included self-detachment, loss of contact with reality, and delusional experiences upon Mr. WRIGHT's belief that there was no relief from his pain in sight.

37. On July 8, 2023, Mr. WRIGHT called for a Crisis Team and spoke with mental health provider, Mrs. Taylor Oaks, about his headaches, dizziness, shortness of breath, and jaw pain.

38. However, and in response to Mr. WRIGHT's report, Mrs. Taylor Oaks told Mr. WRIGHT on July 8, 2023, that she was powerless to do anything about Mr. WRIGHT's crisis, further stating "they won't let me."

39. Mental health provider Mrs. Taylor Oaks told Mr. WRIGHT on July 23, 2023, that Mrs. Mines did not know how to do her job and that the current Sheridan Correctional Center administration would not allow Mrs. Mines to help Mr. WRIGHT.

40. On July 27, 2023, mental health providers, Mrs. Taylor Oaks and Mrs. Mines, visited Mr. WRIGHT and informed Mr. WRIGHT that his mental health was in shambles.

41. Also, during this time, from July 8, 2023, to July 28, 2023, Mr. WRIGHT was losing weight, and his health was suffering at accelerated rates.

42. On July 28, 2023, Mr. WRIGHT experienced unbearable pain, felt helpless and began contemplating suicide. Mr. WRIGHT tied two shoestrings together in an attempt to hang

8

himself to stop the pain. Mr. WRIGHT began screaming for help but no officers, sergeants, nor any lieutenants came to help him.

43. From July 28, 2023, through August 2, 2023, Mr. WRIGHT remained on suicide watch. During this time, Mr. WRIGHT does not recall any officers, sergeants, nor any lieutenants checking on him. Nor was Mr. WRIGHT taken to a dentist outside of the facility for dental treatment.

44. Mr. WRIGHT was also prescribed Trazadone, an anti-depressant drug in the form of hydrochloride pills, causing him to lose more weight and heightening and/or triggering his seasonal affective disorder.

45. Following Mr. WRIGHT's release from restrictive housing on August 2, 2023, Defendant John Doe #1 rushed Mr. WRIGHT to the psychiatrist and dentist at the Health Care Infirmary but informed Mr. WRIGHT that he should not say anything to the psychiatrist about what Mr. WRIGHT was experiencing. It is believed John Doe #1 informed Mr. WRIGHT of this to prevent Mr. WRIGHT from being placed on med-watch and therein preventing Mr. WRIGHT's transfer to the Lawrence Correctional facility.

46. Following his transfer to the Lawrence Correctional facility in August 2023, Mr. WRIGHT again requested mental health treatment but did not receive it.

47. On October 29, 2023, Mr. WRIGHT was evaluated by Dr. Quan Tran at Lawrence Correctional Center, who determined that Mr. WRIGHT's Teeth #s 17 & #32 were horizontally impacted with #32 having a dentigerous cyst eroding the distal root of #31 and ordered emergency surgery to treat Mr. WRIGHT's horizontally impacted teeth and the dentigerous cyst eroding the distal root of another tooth.

48. On November 21, 2023, Mr. WRIGHT submitted emergency grievance [GRV#75-0124-369] but was still not taken to see a different dentist for his mouth pain.

49. Over a month later, on November 27, 2023, Mr. WRIGHT was seen by Dr. Swanson in Effingham, Illinois, for consultation and with intention to return for treatment. However, before Mr. WRIGHT was to return, Dr. Swanson informed Lawrence Correctional facility that his office would no longer see any individuals from Lawrence Correctional Center because the contract between them had ended. Mr. WRIGHT was referred elsewhere for treatment.

50. On February 11, 2024, Mr. WRIGHT wrote to Mental Health concerning his mental health and to express the pain and suffering he experienced from his rotting tooth, along with the headaches causing him mental anguish.

51. On February 13, 2024, Mr. WRIGHT wrote a request for "sick call pass" seeking dental care and appropriate pain medication, i.e., stronger than the Tylenol or Motrin he had previously been prescribed.

52. On March 7, 2024, Mr. WRIGHT obtained x-rays of his jaw and face.

53. On March 29, 2024, Dr. Quan Tran at Lawrence Correctional Center referred Mr. WRIGHT to Dr. Damian Findlay DMD, MD at Mercy Hospital in Saint Louis, MO for a consultation.

54. Mr. WRIGHT continued to suffer and failed to receive appropriate treatment for his mouth injuries and pain for another two months.

55. On May 10, 2024, Mr. WRIGHT finally received dental treatment from an Oral/Facial surgeon, Dr. Damian Findlay DMD, MD, FACS, at the Oral Facial Surgery Institute in St. Louis, Missouri, at which time Mr. WRIGHT's Wisdom tooth and the underlying cyst were extracted.

56. On that date, May 10, 2024, Dr. Damian Findlay, WRIGHT's Oral Surgeon, informed Mr. WRIGHT that the extractions should have been performed a long while ago.

57. Thereafter, on October 15, 2024, Dr. Quan Tran removed Mr. WRIGHT's second tooth in need of dental care.

58. Dentist Dr. Quan Tran had meetings with Wexford Health to discuss Mr. Wright's dental health multiple times between October 20, 2023, through May 10, 2024.

59. From the time Mr. WRIGHT was seen by Dr. Swanson in Effingham, Illinois, on November 2023, which provider IDOC that his office would not be taking more patients from Lawrence, to the time Mr. WRIGHT was fully treated, Mr. WRIGHT suffered a delay in treatment of six months, during which time he suffered intense and ongoing pain.

**COUNT I – EIGHTH AMENDMENT VIOLATION OF MR WRIGHT'S RIGHT TO BE FREE OF CRUEL AND UNUSUAL PUNISHMENT PURSUANT TO 42 U.S.C. SEC. 1983 (DELIBERATE INDIFFERENCE TO MR. WRIGHT'S MEDICAL NEEDS BASED ON UNCONSTITUTIONAL POLICY OR CUSTOM)**

**(Mr. WRIGHT v. Wexford Health)**

60. Mr. WRIGHT incorporates paragraphs 1 through 59 herein.

61. 42 U.S.C. Sec. 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subject any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in any action at law, suit in equity, or other appropriate proceeding for redress[.]

62. Mr. WRIGHT is a citizen of the United States, and Wexford Health is a person under 42 U.S.C. Sec. 1983.

63. At all times relevant to this action, Mr. WRIGHT had a clearly established Constitutional right under the Eighth Amendment to be free from cruel and unusual punishment.

64. Under 42 U.S.C. Sec. 1983, liability may arise where the government's own policy of custom leads to the constitutional violation.

65. Wexford Health, at the times relevant to this complaint, was responsible for the implementation, oversight and supervision of health care policies and practices (including mental health policies and practices) at Sheridan Correctional Center and Lawrence Correctional Center, and on behalf of the IDOC, generally.

66. At all times relevant to this action, Wexford Health had policies and customs in effect that permitted the Sheridan Correctional Center and Lawrence Correctional Center medical staff to fail to treat Mr. WRIGHT's serious medical needs without repercussion.

67. At all times relevant to this action, Wexford Health had policies and customs in effect that inflicted unnecessary suffering on Mr. WRIGHT by allowing its medical personnel to fail to treat Mr. WRIGHT's serious medical needs.

68. At all times relevant to this action, Wexford Health had policies and customs in effect that permitted the Sheridan Correctional Center and Lawrence Correctional Center medical staff to respond with manifest indifference to the serious medical needs of Mr. WRIGHT.

69. Despite its obligation to provide Mr. WRIGHT with health care services on behalf of the IDOC, Wexford Health had intentionally failed and/or refused to do so.

70. As a direct and proximate cause of Wexford Health's policies and customs, Mr. WRIGHT has suffered actual physical injuries, mental anguish and suffering, personal humiliation and other damages described herein, entitling him to compensatory and special damages in an amount to be determined at trial.

WHEREFORE, Plaintiff Mr. WRIGHT respectfully requests that judgment be entered in his favor and against Defendant Wexford Health Sources, Inc. in an amount in excess of

$75,000.00, plus interest, costs of suit, attorney's fees, and any other relief to which Mr. WRIGHT may be entitled and that this Court deems just and proper. Plaintiff Mr. WRIGHT also respectfully requests that a permanent injunction be entered in his favor requiring Wexford Health Sources, Inc. to provide all necessary medical health care to Plaintiff during the entirety of his incarceration.

**COUNT II – RESPONDEAT SUPERIOR (FAILURE TO PROVIDE TIMELY AND PROPER MEDICAL SERVICES FOR MR. WRIGHT'S MEDICAL NEEDS - STATE LAW CLAIM)**

**(Mr. WRIGHT v. Wexford Health)**

71. Mr. WRIGHT incorporates paragraphs 1 through 70 herein.

72. The IDOC contracted with Wexford Health for Wexford Health to provide health care services on behalf of the IDOC to prisoners at Sheridan Correctional Center and Lawrence Correctional Center.

73. As the health care service provider for IDOC at the Sheridan Correctional Center and Lawrence Correctional Center, Wexford Health is responsible for the implementation, oversight and supervision of health care policies and practices (including mental health policies and practices) at the Sheridan Correctional Center and Lawrence Correctional Center, and on behalf of the IDOC, generally.

74. As the health care service provider for Sheridan Correctional Center and Lawrence Correctional Center, Wexford Health is responsible for providing medical care, including mental health care, to Mr. WRIGHT.

75. At all times relevant to this action, Wexford Health knew that Mr. WRIGHT was in need of significant dental care while incarcerated.

76. At all times relevant to this action, Wexford Health knew that employees, agents and/or representatives of Wexford Health – namely, those serving the Sheridan Correctional Center

and Lawrence Correctional Center as medical staff – failed and/or refused to provide Mr. WRIGHT with treatment for his serious dental issues for which he suffered extreme mental distress.

77. As a direct and proximate cause of Wexford Health's deliberate indifference, and the failures of its employees to provide Mr. WRIGHT timely and proper medical services for Mr. WRIGHT's serious medical needs, Mr. WRIGHT suffered actual physical injuries, mental anguish and suffering, personal humiliation and other damages described herein, entitling him to compensatory and special damages in an amount to be determined at trial.

WHEREFORE, Plaintiff Mr. WRIGHT respectfully requests that judgment be entered in his favor and against Defendant Wexford Health Sources, Inc. in an amount in excess of $75,000.00, plus interest, costs of suit, attorney's fees, and any other relief to which Mr. WRIGHT may be entitled and that this Court deems just and proper.

**COUNT III – EIGHTH AMENDMENT VIOLATION OF MR. WRIGHT'S RIGHT TO BE FREE OF CRUEL AND UNUSUAL PUNISHMENT PURSUANT TO 42 U.S.C. SEC. 1983**

**(DELIBERATE INDIFFERENCE TO MR. WRIGHT'S MEDICAL NEEDS)**

**(Mr. WRIGHT v. Defendants Warden Sherwin Kia Miles, Warden K. Daniels, Warden Jeremiah Brown, and John Doe #1, Inclusive – Hereinafter, the "Correctional Defendants")**

78. Mr. WRIGHT incorporates paragraphs 1 through 77 herein.

79. At all times relevant to this action, and to each's actions specified herein, the Correctional Defendants knew that Mr. WRIGHT suffered from significant dental issues for which he suffered pain and extreme mental distress while incarcerated.

80. At all times relevant to this action, the Correctional Defendants knew that the failure to treat Mr. WRIGHT's significant dental issues and mental health distress could result in further significant injury and unnecessary and wanton infliction of pain and mental distress upon Mr. WRIGHT.

81. Despite knowing the facts from which the inference could be drawn that substantial risk of serious harm existed to Mr. WRIGHT if his dental needs went untreated, the Correctional Defendants deliberately and intentionally failed to provide basic medical care to treat Mr. WRIGHT's medically necessary dental needs.

82. As a direct and proximate cause of the Correctional Defendants' conduct, Mr. WRIGHT suffered actual physical injuries, mental anguish and suffering, personal humiliation and other damages described herein, entitling him to compensatory and special damages in an amount to be determined at trial.

83. As a direct and proximate cause of the Correctional Defendants' willful, reckless and wanton disregard for Mr. WRIGHTs federally protected Constitutional rights, Mr. WRIGHT is entitled to punitive damages under 42 U.S.C. Sec. 1983.

WHEREFORE, Plaintiff Mr. WRIGHT respectfully requests that judgment be entered in his favor and against the Correctional Defendants in an amount in excess of $75,000.00, plus interest, costs of suit, attorney's fees, and any other relief to which Mr. WRIGHT may be entitled and that this Court deems just and proper.

Dated: October ___, 2025

Respectfully Submitted,

*/s/ Anna Morrison-Ricordati*
Attorney for Plaintiff

Anna Morrison-Ricordati (ARDC 6279300)
Wiedner & McAuliffe, Ltd.
1 N. Franklin #1900
Chicago, IL 60606
Ph: 312.855.1105
amricordati@wmlaw.com

**Verification Pursuant to 28 U.S.C. Sec. 1746**

I, Courtney Wright, Plaintiff in Case No 24-cv-5241, declare under penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge.

Date: October 29, 2025

*Courtney Wright*
Courtney Wright