**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| COURTNEY WRIGHT,<br><br>Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., et al.,<br><br>Defendants. | No. 24 CV 5241<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Courtney Wright is an inmate at the Lawrence Correctional Center. Before he was housed at Lawrence, he was an inmate at the Sheridan Correctional Center. Beginning in fall 2022, he experienced a swollen jaw and sharp pains when he opened and closed his mouth. But he did not receive needed dental surgeries to address what turned out to be two impacted teeth and a dentigerous cyst until May and October 2024. Defendant Lorie Cunningham was a Medical Administrator at Lawrence Correctional Center, responsible for transportation of inmates to medical appointments and payment for medical services. Defendant Candice Daniels was the warden at Sheridan Correctional Center and defendant Jeremiah Brown was the warden at Lawrence Correctional Center. Wright alleges that these defendants knew he suffered from significant dental issues and deliberately and intentionally failed to treat those issues in violation of the Eighth Amendment under 42 U.S.C. § 1983. Cunningham, Daniels, and Brown move to dismiss Wright's complaint. For the

reasons discussed below, the motion is granted as to Cunningham and Daniels and denied as to Brown.

## I. Legal Standards

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, disregarding legal conclusions or "[t]hreadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

## II. Facts

Plaintiff Courtney Wright is currently serving a 75-year sentence at Lawrence Correctional Center, where he has been since August 2023. [49] ¶¶ 19, 46.[1] In fall 2022, Wright was housed at the Sheridan Correctional Center when his dental issues began. *Id.* ¶ 20.

Beginning in September or October of 2022, Wright submitted "sick call passes," for a dentist and was seen by C. Okezie for a dental exam. *Id.* ¶¶ 20–22. During the exam, Wright told Okezie that his jaw was swollen and that he felt sharp pain when he opened and closed his mouth. *Id.* ¶ 22. Okezie told Wright that he

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiff's second amended complaint, [49].

needed new fillings but that the facility had no tools and no dental hygienist. *Id.* ¶ 23. Wright followed up with Warden Miles about his dental issues, and nothing was done in response. *Id.* ¶ 24.

In January 2023, Wright asked to see a dentist other than Okezie and made repeated requests for mouth pain relief. *Id.* ¶¶ 25–26. Within a month, Wright saw Okezie again. *Id.* ¶ 27. During that visit, Okezie observed fluid and infected tissue in Wright's mouth but told Wright there was nothing wrong and that he just needed new fillings. *Id.* ¶ 27. Wright declined Okezie's offer of new fillings and asked to see a different dentist. *Id.* ¶ 28. His request was denied and his dental issues got worse. *Id.* ¶ 28.

Throughout the spring of 2023, Wright saw several providers at Sheridan and spoke with them about his swollen jaw, tooth pain, and other symptoms including puss coming from his ears, headaches, and watery red eyes. *Id.* ¶¶ 29–32. These providers advised Wright that he should request a dentist and Wright, at some point, saw Okezie again. *Id.* ¶¶ 29–33.

Wright's pain got worse during the summer of 2023. *Id.* ¶ 34. Wright spoke to Daniels three times between June and August 2023 about his need for medical attention during her walk throughs at the facility. *Id.* ¶ 35. Each time, Daniels told Wright to write to the dentist. *Id.* Wright also experienced mental health issues due to his mouth pain during July and August that culminated in an attempt to hang himself. *Id.* ¶ 42. He was on suicide watch for about six days, and then he was transferred to Lawrence Correctional Center. *Id.* ¶¶ 43–46.

Wright's dental problems continued at Lawrence. In October 2023, Wright saw Dr. Quang Tran who determined that two of Wright's teeth were horizontally impacted and that one had a dentigerous cyst eroding the root of another tooth. *Id.* ¶ 47. Tran ordered emergency surgery. *Id.* Nearly a month after Tran ordered the surgery, Wright submitted an emergency grievance and, a week later, saw an outside dentist who could not treat him because his contract with Lawrence ended. *Id.* ¶¶ 48–49.

From January 2024 until May 2024—when Wright finally received his first surgery—Wright spoke and wrote to Brown about his dental condition. *Id.* ¶ 50. First, Wright told Brown that his tooth was causing him excruciating pain and that he had filed an emergency grievance. *Id.* ¶ 51. Brown told Wright that there was nothing he could do and he should write to medical. *Id.* A month later, Wright filed another grievance. *Id.* ¶ 52. Brown deemed the grievance a non-emergency and, again, informed Wright there was nothing he could do. *Id.* Another time, Wright asked Brown for a special diet with only soft foods and Brown instructed Wright to write to the Chaplain. *Id.* ¶ 54.

In March 2024, Tran referred Wright to an outside dentist who prescribed him pain medication. *Id.* ¶ 56. In the months following, Wright asked Brown twice for the pain medication that was prescribed. *Id.* ¶¶ 58–59. In May 2024, Wright and another inmate spoke with Brown during a walk through and showed Brown the X-rays of Wright's mouth. *Id.* ¶ 59. Brown told Wright that he could not do anything about it and that he would not be able to get the pain medications he was prescribed. *Id.* ¶ 59.

The next day, Wright's wisdom tooth and the underlying cyst were extracted. *Id.* ¶ 60. In October 2024, Wright's second tooth was extracted. *Id.* ¶ 62.

Wright filed this lawsuit against various medical and non-medical officials from Sheridan and Lawrence, alleging violations under 42 U.S.C. § 1983 based on a failure to provide medical care. [1]; [32]; [49]. Only defendants Cunningham, Daniels, and Brown move to dismiss.

## III. Analysis

### A. Deliberate Indifference and Personal Involvement

Wright's claim against these defendants arises under the Eighth Amendment prohibition of prison conditions that (1) pose a substantial risk of serious harm and (2) are the result of a sufficiently culpable state of mind, namely the defendants' deliberate indifference to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Defendants do not dispute that Wright's dental issues posed a substantial risk of serious harm. And tooth decay can be an objectively serious medical condition. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Wright alleges that he was in enormous pain because two of his teeth were impacted and that one of the impacted teeth had a cyst eroding the root of a third tooth. [49] ¶¶ 47, 51. I accept, for the purposes of defendants' motion to dismiss, that Wright's alleged dental issues were sufficiently serious.

Defendants challenge the second part of the framework: that they were deliberately indifferent to Wright's dental needs. Officials are deliberately indifferent

if they "acted or failed to act despite [their] knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference can include a delay in necessary medical care "if the delay exacerbated injury or prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011).

To state a § 1983 claim, Wright must also allege that each defendant had some personal involvement. Defendants are correct that officials cannot be held liable under § 1983 on the theory of respondeat superior—an official must have had some "personal involvement in the alleged constitutional deprivation." *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Personal involvement requires that the official must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988)) (citation modified). In other words, a "causal connection or affirmative link between the action complained about and the official sued is necessary." *Arnett*, 658 F.3d at 757.

Non-medical officials like Cunningham, Brown, and Daniels may rely on the judgment of medical staff. *Id.* at 755. But non-medical officials cannot stand back and ignore a suffering inmate. *Id.* Once a non-medical official has knowledge of or a reason to believe that the medical staff's care puts an inmate at risk, the "refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Id.* at 756 (quoting *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)).

Although defendants lump Daniels and Brown together as "the wardens," deliberate indifference and personal involvement depend on each individual

defendant's conduct and the actions (or inactions) they took towards Wright's dental plight. I consider each defendant separately.

*1. Cunningham*

Defendants argue that Wright fails to state a claim as to Cunningham because he fails to allege any facts relating to Cunningham's personal involvement in his complaint. [57] at 4–5. I agree. Wright's complaint says very little about Cunningham. Wright only says that she was employed as a medical administrator at Lawrence and was responsible for the transportation of prisoners to medical appointments and payment for those services. [49] ¶ 12. However, in his response to the motion to dismiss, Wright provides additional details about Cunningham's involvement. [61] at 6–7. Wright alleges that Cunningham's "decision not to arrange for the timely transport and allocation of money to pay for Mr. Wright's emergency surgery deliberately delayed Mr. Wright's treatment." [61] at 7. In an opposition brief, "a plaintiff may 'supplement' the complaint with 'extra assertions'" if they are consistent with the complaint. *Knox v. Curtis*, 771 Fed. App'x 656, 658 n.2 (7th Cir. 2019) (quoting *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997); *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015).

Even with this added detail, Wright fails to state a claim against Cunningham. Wright must allege that each defendant was personally involved in his alleged constitutional deprivation including that they knew about the conduct and facilitated, condoned, approved, or turned a blind eye towards it. *Gentry*, 65 F.3d at 561 (quoting *Jones*, 856 F.2d at 992). Wright fails to suggest that Cunningham knew about

Wright's underlying dental condition and the nature of the needed surgery. Wright does not assert that he had personal contact with Cunningham, that she reviewed his grievances, or that she denied him the opportunity to get surgery after she knew about his needs. Denying transport and payment, without knowing that those decisions caused or exacerbated a serious medical condition, is not enough for Cunningham to have participated in a constitutional violation.

*2. Daniels*

As the warden, Daniels could "rely on the expertise of medical personnel." *Arnett*, 658 F.3d at 755. Part of this reliance includes directing inmates to the appropriate medical personnel. *Id.* In *Arnett,* the plaintiff alleged that he went to the warden two to three times per week with his medical complaint and the warden told him to "[g]o talk to [the doctor]." *Id.*

Wright alleges even less than the plaintiff in *Arnett*. Wright claims that he spoke to Daniels about his dental issues three times over the course of summer 2023. [49] ¶ 35. Although he states in his complaint that Daniels took no action, he admits that each time he spoke with her, Daniels told Wright to "write to the dentist." *Id.* This is insufficient to state a claim that Daniels was deliberately indifferent to Wright's medical needs. By telling Wright to contact the dentist—who had already seen Wright multiple times for his complaints—Daniels was relying on the expertise of medical personnel. And Wright does not allege that Daniels knew about his dissatisfaction with the prison's dentist or that the dentist's treatment of him had been inadequate. Without a suggestion that Daniels knew or had reason to believe

that the dentist's treatment was inadequate, Daniels was "able to relegate to the prison's medical staff the provision of good medical care." *Arnett*, 658 F.3d at 756; *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

### 3. *Brown*

Brown is differently situated than Daniels. Once a prison official knows about an excessive risk to an inmate's health, "refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (quoting *Vance*, 97 F.3d at 993). "In other words, prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference." *Id.* (quoting *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997)).

Brown was made aware of Wright's complaints through in-person interactions and written grievances and he failed to act in response. First, after emergency surgery had been ordered, Wright repeatedly complained to Brown and Brown told him more than once that there was "nothing he could do." [49] ¶¶ 50–52, 59. Second, after Wright was prescribed pain medication by an outside dentist, Brown told Wright that he would not be able to get the medications while he was at Lawrence. *Id.* ¶ 59. Finally, the day before his first surgery, Wright showed Brown the X-ray of his mouth, Brown's assistant said it looked serious, and Brown told him again there was nothing he could do. *Id.* ¶ 59.

Wright's allegations are sufficient to state a claim against Brown. Drawing all reasonable inferences in Wright's favor, his allegations suggest that Brown knew about an excessive risk to his health and, in telling Wright there was nothing he could

do, declined or refused to exercise some authority that he may have had. *Perez*, 792 F.3d at 782. Unlike Daniels, Brown had more information about Wright's condition and did not relegate Wright's care to the medical staff at Lawrence. Brown saw Wright's x-ray, knew that medical staff had ordered surgery and prescribed pain medication, and knew that Wright had not received the surgery or the medication. [49] ¶¶ 51–52, 59. Further discovery will shed light on what steps, if any, Brown took or could have taken from his position as warden. On a motion to dismiss, Wright's complaint has sufficiently alleged that Brown was deliberately indifferent to his serious dental issues.

**B. Qualified Immunity**

Defendants also argue that Brown should be protected by qualified immunity. [57] at 7-10. "Qualified immunity is a defense protecting government officials from both liability and suit." *Roldan v. Stroud*, 52 F.4th 335, 338 (7th Cir. 2022). A qualified immunity analysis involves two questions. First, whether a constitutional right was violated, and second, whether the right was clearly established at the time of the violation. *Id.* For a right to be clearly established, the law must have been "'sufficiently clear' that every 'reasonable official would understand what he is doing' is unlawful." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Ashcroft v. Al-Kidd*, 536 U.S. 731, 741 (2011)). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* Wright points to *Dobbey v. Mitchell-Lawshea*, 896 F.3d 938, 941 (7th Cir. 2015), as precedent clearly establishing his right to "adequate and timely provision of

medical care." [61] at 10. In *Dobbey*, the Seventh Circuit reversed a grant of summary judgment for a prison guard who was aware of an inmate's tooth pain from an abscess and failed to report the complaint to dental staff. *Dobbey*, 896 F.3d at 941.

Defendants are correct that qualified immunity can be decided on a motion to dismiss and that a plaintiff can "plead himself out of court on qualified immunity grounds." *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025). But the "motion-to-dismiss stage is rarely 'the most suitable procedural setting to determine whether an official is qualifiedly immune.'" *Roldan*, 52 F.4th at 339 (quoting *Hanson v. LeVan*, 967 F.3d 584, 589 (7th Cir. 2020)). Whether qualified immunity applies often turns on "the particular facts of a given case." *Id.* (quoting *Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)).

Here, discovery is needed to determine whether Brown is qualifiedly immune. More information is needed on what actions Brown took in response to Wright's grievances, why he denied certain emergency grievances, whether he communicated with prison medical staff on the matter, and the reasons for and consequences of the months-long delay in Wright's surgery. It may well be the case that Brown was not clearly on notice that his conduct violated the Constitution, but the issue will be more appropriately decided with the benefit of additional discovery.

## IV. Conclusion

Defendants' motion to dismiss, [57], is granted in part and denied in part. Wright's claim against Cunningham and Daniels is dismissed without prejudice.[2] Wright's claim against Brown remains pending.

ENTER:

Manish S. Shah
United States District Judge

Date: September 9, 2026

[2] A plaintiff who has claims dismissed under Rule 12(b)(6) is ordinarily given at least one opportunity to amend his complaint. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Nw. Indiana*, 786 F.3d, 510, 519 (7th Cir. 2015); *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022).